UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DARWIN GAUTHIER**  #340177 | **CIVIL ACTION NO. 12-CV-535**  **SECTION P** |
| **VERSES** | **JUDGE MINALDI** |
| **ALLEN CORRECTION CENTER MEDICAL DEPARTMENT, ET AL** | **MAGISTRATE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint filed *in forma pauperis* on February 23, 2012, by *pro se* plaintiff Darwin Gauthier[1]. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) and is incarcerated at Allen Correctional Center (ACC) in Kinder, Louisiana.

Plaintiff names the following defendants in this matter: ACC Medical Department; GEO Group, Inc.; ACC Assistant Warden Mark Estes; ACC Health Services Administrator (HSA) Angela Easom; ACC physician Gehrig Harris; ACC nurse Summer Gautreaux; and, unknown John/Jane Does.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

*I.  Background*

A review of the pleadings establishes the following relevant chronology:

---

[1] Plaintiff filed amended complaints on July 23, 2012 [doc. 11] and January 21, 2013 [doc. 15]. On February 19, 2013, he responded to this court's memorandum order directing him to provide additional information in support of his claims. Doc. 17.

-1-

- *October 2010:*  Plaintiff injured his back while performing assigned duties at ACC, resulting in back and leg pain.  Following the accident, plaintiff submitted two sick call requests.  Doc. 9, att. 2, p. 2.  He states that the infirmary tried to treat him but that the medication (Naprosyn) did not relieve his pain.  Doc. 1, p. 5.

- *November 3, 2010:*  Plaintiff filed a request form in which he stated that the medication was not working, that it caused stomach pain, and that he found blood in his stool.  Doc. 17, p. 5.

- *November 4, 2010:*  Defendant Easom responded to the request form.  She stated that plaintiff that he had to fill out a sick call request and that there were not any other medications to treat plaintiff as he had been on all that ACC had to offer but did not like any of them.  Doc. 17, p. 5.

- *November 2010:*  Plaintiff was seen by ACC nurse practitioner Harmon.  Harmon changed plaintiff's medication, which lessened the intensity of his pain but did not eliminate it.  Doc. 15, p. 6.  Plaintiff was later seen by Dr. Harris who prescribed a different medication for plaintiff.  *Id.*

- *November 16, 2010:*  Plaintiff submitted an ARP concerning his treatment for injuries from the incident in question (ARP 2010-851).  Doc. 17, p. 3.

- *December 20, 2010:*   In response to his complaint the health services administrator noted that pain medication was ordered in November 2010, that an x-ray was taken on November 9, 2010 (showing slight arthritis in L-4), and that plaintiff was examined on December 6, 2010 at which time he indicated that he was feeling much better.  *Id.*

- *January 6, 2011:*  Plaintiff filed a second step ARP (2010-851) where he stated that he had five sick calls since the date of the incident and that the medications were not relieving his arthritis pain.  Plaintiff requested an MRI, treatment from outside facilities, and medication from outside doctors.  Doc. 17, p. 2.

- *February 24, 2011:*   In response to his second step ARP (2010-851) the headquarters staff noted that plaintiff was examined on December 6, 2010, wherein he indicated that he still had some pain in his right leg and hip joint but that he was feeling much better.  The response also stated that as the treatment was working, it was continued.  His medical care was deemed adequate.  Doc. 17, p. 4.

- *Early 2011:*  Plaintiff had an MRI, which showed a bulging disc in the L-5 region.  Plaintiff contends that this injury resulted in sciatica and atrophy in his right leg.  Doc. 15, p. 7.

- *October 28, 2011:*  Plaintiff filed a sick call stating that he needed to update his duty status.  He also stated that he needed to see the doctor about increasing his

medication dosage as the length of time of its effectiveness had declined.  Doc. 1, p. 5.

- *November 4, 2011:*  Plaintiff was seen by Dr. Harris.  Plaintiff contends that defendant Harris told him he was increasing his medication from 600 mgs. twice daily to 800 mgs. twice a day.  Doc. 15, p. 7.

- *November 11, 21, and 27, 2011:*  Plaintiff filed sick call requests to see or notify Dr. Harris that his medication was being dispensed at 800 mgs. once a day.  Plaintiff claims that this reduction was causing him to experience pain.  In response to the requests, plaintiff states that defendant Gautreaux told him that his chart would be forwarded to the doctor for review.  *Id.*

- *November 30, 2011:*  Plaintiff submitted an ARP seeking a medication adjustment.  (ARP 2011-792).  Doc. 17, p. 6.

- *December 14, 2011:*  In response to his complaint the health services administrator noted that plaintiff had received verbal responses to the sick call requests of 11/7, 11/11, 11/21, and 11/27, 2011.  The verbal responses informed plaintiff that his requests were sent to Dr. Harris for review.  The response also noted Dr. Harris' confirmation that plaintiff had a problem with his spine, namely right lumbar radiculopathy, for which plaintiff had been evaluated by history, physical examination, x-rays, and an MRI.  The response stated that the treatment for plaintiff's condition was Neurontin and that plaintiff would have to be patient as the results would not be instant.  Doc. 17, p. 6.

- *January 5, 2012:*  Plaintiff notified the ARP screening officer that he was not satisfied with the December 14, 2011 response and that he was proceeding to step two of the grievance process.  Doc. 17, p. 6.  In response to his second step ARP (2011-792) the headquarters staff noted that plaintiff's statement and medical records were reviewed and that his medical care was deemed adequate  Doc. 17, p. 7.

- *February 15, 2012:*  Plaintiff filled out a sick call request to speak with Dr. Harris about his mid-back pain and treatment options.  Doc. 15, p. 7.

- *February 24, 2012:*  Plaintiff was called to the infirmary for a blood test.  He initially refused as he did not know why the test was needed.  Thereafter, defendants Easom and Estes met plaintiff at the infirmary and Easom informed plaintiff that the test was needed for his medical treatment. Plaintiff submitted to the test.  Doc. 15, p. 7.  The results from plaintiff's lab work showed a low level of Neurotin in his blood system.  Defendant Easom issued a disciplinary report citing plaintiff with failure to take his prescribed medication.  Doc. 15, p. 8.

- *February 27, 2012:*  Plaintiff filed an ARP (2012-166) based on his placement in lock-down following the blood test incident.  Doc. 17, pp. 10-11.  This ARP

(2012-166) was rejected as it was based on a disciplinary matter that should have been appealed. Doc. 17, p. 9.

- *March 5, 2012:* Plaintiff states that he was taken off of Neurotin because, based on the lab results, Dr. Harris thought that he was misusing the medication. Doc. 15, p. 8.

- *April 13, 2012:* Plaintiff was seen by Dr. Harris. Plaintiff states that he did not ask to be put back on the medication because he did not need it as the pain fluctuates. Doc. 17, p. 15.

- *May 2012:* Plaintiff filed an ARP (2012-215) concerning the lack of medication. In the ARP, plaintiff admitted to getting medication during pill call but taking it only as needed. Doc. 17, pp. 14-15.

- *June 28, 2012:* In response to his ARP (2012-215) the headquarters staff noted that after each sick call assessment plaintiff's medical chart was referred to and reviewed by the doctor. The medical records showed that plaintiff was noncompliant with taking the Neurotin and it was discontinued. Doc. 17, p. 12.

- *October 2, 2012:* Plaintiff's ARP (2012-374)[1] dated September 13, 2012 was received by LDOC headquarters. Doc. 17, p. 13.

- *November 16, 2012:* In response to his ARP (2012-374) the headquarters staff noted that his statement and medical records were reviewed and his medical care was deemed adequate. Doc. 17, p. 13.

## *II. Relief*

Plaintiff contends that the above actions of the defendants constitute cruel and unusual punishment and amount to deliberate indifference to his serious medical needs. As relief, plaintiff seeks injunctive relief; compensatory damages for pain, suffering and mental stress; and, punitive damages.

## *III. Law and Analysis*

### A. Screening

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court

---

[1] Plaintiff does not attach a copy of this ARP.

determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted.  *See*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  A complaint is frivolous if it lacks an arguable basis in law or fact.  *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)).  A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir.1998).  When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true.  *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

**B.  *42 U.S.C. § 1983***

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated.  If no constitutional violation has been alleged, there is no cognizable claim under §1983.  In order to hold the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor.  *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir.1985).

*1.  Medical Care Claims*

Plaintiff claims that defendants Easom, Harris, Estes, and Gauteaux were deliberately indifferent to his serious medical needs.   Medical care claims asserted by convicted prisoners

like plaintiff are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Woodall,*

*supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Lynaugh*, 920 F.2d 320, 321(5th Cir. 1992). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992).

In the instant case, the information contained in plaintiff's complaint, amended complaints, and exhibits shows that plaintiff received substantial medical treatment, including doctor's visits, x-rays, an MRI, and medication. Plaintiff's allegations, at most, state a disagreement amongst himself and the medical staff regarding procedures to treat his medical problems.

As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred. Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See Shaw v. Murphy*, 532 U.S. 223, 121 S. Ct. 1475, 149 L. Ed. 420 (2001). The decision regarding plaintiff's treatment is best left to the prison officials. The facts here clearly do not demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated [plaintiff] incorrectly or evince a wanton disregard..." for plaintiff's medical needs.

Plaintiff has not alleged facts sufficient to establish deliberate indifference and his claims in this regard should be dismissed.

### 2. *Supervisor Liability*

Although plaintiff fails to state a viable claim against any of the defendants, the court specifically notes that his claims against GEO Group, Inc. are not cognizable. It is well settled that supervisory officials may not be held liable under §1983 under the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508 U.S.

951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).  To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation.  *Id.*

Plaintiff has failed to state a claim upon which relief may be granted and his claims against this defendant should be dismissed.

### 3.  *Improper Defendant*

Plaintiff's claim against Allen Correctional Center Medical Department is not viable. Fed. R. Civ. P. 17(b) provides that the capacity to sue or be sued is determined "by the law of the state where the court is located."  Thus, Louisiana law governs whether ACC medical department has the capacity to be sued in this action.  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person."  La. Civ. Code Ann. art. 24.  This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership."  *Id.*  In Louisiana, correctional centers and their medical departments are not legal entities capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988).  In other words, the State of Louisiana has not granted juridical status to ACC or its medical department.

The ACC medical department is not a proper party to this suit and plaintiff's action against this defendant should be dismissed.

### *IV. Conclusion*

For the reasons stated,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint **be DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted pursuant to the provisions of 28  U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir.1996).**

THUS DONE this 12th day of February, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE